1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  R.M.S.,                          Case No. 2:20-cv-05312-SHK

12                    Plaintiff,

13          v.                       OPINION AND ORDER

14  ANDREW SAUL, Commissioner of
    Social Security,
15
16                    Defendant.

17

18         Plaintiff R.M.S.[1] ("Plaintiff") seeks judicial review of the final decision of

19  the Commissioner of the Social Security Administration ("Commissioner,"

20  "Agency," or "Defendant") denying his application for disability insurance

21  benefits ("DIB") and supplemental security income ("SSI"), under Titles II and

22  XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42

23  U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties

24  have consented to the jurisdiction of the undersigned United States Magistrate

25  Judge. For the reasons stated below, the Commissioner's decision is REVERSED

26  and this action is REMANDED for further proceedings consistent with this Order.

27  _____

28  [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
    respect to Plaintiff's medical records discussed in this Opinion and Order.

# I.    BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on March 10, 2017, alleging disability beginning on January 8, 2015.  Transcript ("Tr.") 11, 183-201.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on July 1, 2019, ALJ Janice E. Barnes-Williams determined that Plaintiff was not disabled.  Tr. 11-22.  Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on April 30, 2020.  Tr. 3-6.  This appeal followed.

# II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on January 26, 2021.  Electronic Case Filing Number ("ECF No.") 16.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).

## III.   DISCUSSION

### A.   <u>Establishing Disability Under The Act</u>

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'" <u>Id.</u>

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." <u>Tackett</u>, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920.  The claimant carries

3

the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five.  Tackett, 180 F.3d at 1098.

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity [("SGA")]?  If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB or SSI].  If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  See 20 C.F.R. § 404.1520(b).[3]

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to [DIB or SSI].  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  See 20 C.F.R. § 404.1520(c).

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to [DIB or SSI].  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  See 20 C.F.R. § 404.1520(d).

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to [DIB or SSI].  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  See 20 C.F.R. § 404.1520(e).

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [DIB or SSI].  See 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB or SSI].  See id.

Id. at 1098-99.

**B.**   **Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] met the insured status requirements of the . . . Act through December 31, 2017."  Tr. 13.  The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since January 8, 2015, the alleged onset date (20 C.F.R. 404.1571 et seq. and 416.971 et seq.)."  Id.  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: lumbar degenerative disc disease, thoracic degenerative disc disease, obesity, bilateral hand and wrist arthritis, and major depressive disorder with anxiety (20 CFR 404.1520(c) and 416.920(c))."  Id.  At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  Tr. 14.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> lift and carry up to 50 pounds occasionally and up to 25 pounds frequently. He can stand and/or walk for up to 6 hours and sit for up to 6 hours in an 8-hour workday. He can frequently handle and finger with the left hand. He should avoid extreme cold, excessive vibration and unprotected heights. He can perform simple, routine, and repetitive tasks, which may require detailed instructions but do not involve complex tasks.

Tr. 16. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 21.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on December 28, 1958, and was 56 years old, which is defined as an individual of advanced age, on the date the alleged disability onset date (20 CFR 404.1563 and 416.963)." Id. The ALJ added that "[i]n December 2018, [Plaintiff] changed age categories to closely approaching retirement age." Id.

The ALJ observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)." Id. Specifically, the ALJ found that Plaintiff could perform the "medium" occupations of "counter supply worker" as defined in the Dictionary of Occupational Titles ("DOT") at DOT 319.687-010, "tumbler

operator" at DOT 369.685.034, and laundry worker at DOT 361.684-014. Tr. 22. The ALJ based their decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT] and the Selected Characteristics of Occupations [("SCO")]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that Plaintiff "has not been under a disability, as defined in the . . . Act, from January 8, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." Id.

### C.   Issue Presented

In this appeal, Plaintiff raises one issue, whether the ALJ properly considered the examining opinion of Ernest A. Bagner III, M.D. ("Dr. Bagner"). ECF No. 19, Joint Stip. at 5.

### D.   Court's Consideration Of Issue

#### 1.   Parties' Arguments

Plaintiff argues that "[t]he ALJ impermissibly rejected Dr. Bagner's examining opinion." Id. Specifically, Plaintiff argues that although the ALJ stated they gave "'significant weight'" to Dr. Bagner's opinion, the ALJ nevertheless "rejected Dr. Bagner's opinion that [Plaintiff] had a moderate limitation in dealing with the public, co-worker[]s, and supervisors and in the ability to respond to work pressure in a usual work setting" by giving "'greater weight'" to the opinion of Heather Bradley, Ph.D. ("Dr. Bradley"), that omitted these limitations. Id. at 6 (quoting Tr. 19, citing Tr. 381). Plaintiff explains that the ALJ gave Dr. Bradley's non-examining opinion greater weight because Dr. Bradley "had the 'opportunity

to review records not available to Dr. Bagner[]'" but, Plaintiff argues, "[t]his statement is not supported by the record" because "[t]he only medical evidence of record (MER) reviewed by Dr. Bradley was Dr. Bagner's assessment." Id. at 7 (quoting Tr. 19). Plaintiff adds that Dr. Bradley "did not indicate that she reviewed medical records not contemplated by Dr. Bagner" and instead, Plaintiff notes that Dr. Bradley indicated only that "the record did not reveal 'compelling evidence in the MER to suggest significant limitations in social functioning attributable to the mental impairment.'" Id. (quoting Tr. 100). Plaintiff, therefore, argues that "the ALJ rejected Dr. Bagner's examining opinion with no more than the opinion of a nonexamining opinion" and that "without more, Dr. Bradley's opinion alone is not substantial evidence" to reject Dr. Bagner's opinion. Id. (citation omitted). Plaintiff adds that "there is absolutely no explanation as to why Dr. Bagner's opinion regarding work-pressure was not adopted or considered." Id. at 8 (citation omitted).

Consequently, Plaintiff argues that "the ALJ did not provide specific and legitimate reasons for rejecting significant limitations found by Dr. Bagner [and] [a]s a result, the ALJ's decision is not based on substantial evidence and free from legal error." Id. (citations omitted).

Defendant responds that "the ALJ fully explained [their] rejection of Dr. Bagner's moderate findings" and "[b]ecause substantial evidence supports the ALJ's RFC finding, Plaintiff's argument fails." Id. at 9 (citing Tr. 15-16, 19). Defendant asserts that "the ALJ fully explained [their] partial rejection of certain aspects of Dr. Bagner's opinion, based on both Dr. Bradley's better supported opinion and on other significant evidence in the record." Id. at 11 (citing Tr. 15-16, 19). Defendant argues that "Plaintiff fails to acknowledge the ALJ's thorough discussion of [their] reasoning in rejecting these limitations, based both on Dr. Bradley's opinion and on the record as whole." Id.

///

8

Defendant asserts that "[w]ith respect to Plaintiff's ability to interact with others," "[t]he ALJ expressly noted that Dr. Bagner found that Plaintiff had moderate limitations in interacting with others, but explained that 'the overall record is more consistent with a mild limitation.'" Id. (quoting and citing Tr. 15). Defendant adds that "[t]he ALJ also specifically addressed Dr. Bagner's finding of moderate limitations in [Plaintiff's] ability to adapt to workplace pressures[,] . . . but found that the record did not support limitation in Plaintiff's ability to adapt or manage himself." Id. at 12 (citing Tr. 16).

Defendant also argues that the ALJ's finding that Dr. Bradley's opinion was entitled to greater weight than Dr. Bagner's opinion "because Dr. Bradley 'had the opportunity to review records not available to Dr. Bagner[]'" was not erroneous because Plaintiff's argument to the contrary "fails to acknowledge the ALJ's full explanation of how Dr. Bagner's moderate findings were unsupported by and inconsistent with the record." Id. Defendant adds that "Dr. Bradley was able to review any medical records submitted by Plaintiff" and "to the extent Dr. Bradley did not have mental health treatment records to review, it was because Plaintiff was not receiving mental health treatment" and "[i]nstead of undermining the ALJ's rejection of Dr. Bagner's moderate findings, this fact supports the ALJ's conclusion." Id. Consequently, Defendant argues that "[a]ny error in the ALJ stating that Dr. Bradley reviewed additional medical records would be harmless at best." Id. (citation omitted).

Defendant concludes by arguing that "the ALJ's RFC finding is supported by substantial evidence and free from legal error" and that "the Court should affirm because the ALJ's weighing of the medical evidence was reasonable and supported by substantial evidence." Id. at 13.

## 2. Dr. Bagner's Opinion

On June 26, 2017, Dr. Bagner performed a psychiatric consultative examination ("CE") of Plaintiff and opined, in pertinent part, that Plaintiff had

"moderate" limitations in his ability to "follow detailed instructions[,]" "interact appropriately with the public, co-workers and supervisors[,]" and "respond to work pressure in a usual work setting." Tr. 381. Dr. Bagner also opined that Plaintiff had "mild" limitations in his ability to "follow simple, oral and written instructions[,]" "comply with job rules such as safety and attendance[,]" "respond to changes in a routine setting[,]" and perform "daily activities." Id. Dr. Bagner added that "[f]rom a psychiatric point of view, prognosis is poor without proper treatment." Id. Dr. Bagner assessed that Plaintiff had a "[p]roblem related to social environment[,]" an "[o]ccupational problem[,]" a "[h]ousing problem[,]" an "[e]conomic problem[,]" and a "[h]ealth problem." Id.

In reaching his opinions, Dr. Bagner diagnosed Plaintiff with major depressive disorder with anxiety and noted, in pertinent part, that Plaintiff was "currently homeless" at the time of the evaluation. Tr. 379-80. Dr. Bagner added that Plaintiff had received psychiatric outpatient treatment in August 2016 for one week and that Plaintiff "describe[d] his relationship with family and friends as poor." Tr. 379. Dr. Bagner also noted that Plaintiff was "tearful" during the examination, his speech was "soft in tone[,]" his "volume was soft[,]" Plaintiff "was emotional[,]" his "mood was depressed an anxious[,]" Plaintiff could recall only "1 out of 3 objects in 5 minutes[,]" "[h]e was not able to spell the word 'music' forward and backward[,]" and "[w]hen asked what the meaning of the proverb 'don't judge a book by its cover,' [Plaintiff] stated 'I don't know.'" Tr. 380. Finally, Dr. Bagner observed that Plaintiff was a "fair historian" during the evaluation. Tr. 378.

### 3. Dr. Bradley's Opinion

On July 31, 2017, Dr. Bradley prepared a Disability Determination and Explanation ("DDE"), in which she concluded that Plaintiff was not disabled. See Tr. 91-103 (DDE for Plaintiff's DIB claim); Tr. 105-17 (DDE for Plaintiff's SSI claim). In so concluding, Dr. Bradley first noted that with respect to Plaintiff's

10

mental limitations, Plaintiff had problems with memory, "depressive, bipolar and related disorders[,]" anxiety, "[s]ustained concentration and persistence limitations[,]" and "[s]ocial interaction limitations." Tr. 95, 97, 110-12.

Dr. Bradley next noted that, with respect to the medical evidence she reviewed relating to Plaintiff's mental impairments when preparing her DDE, she reviewed only the CE findings of Dr. Bagner from June 26, 2017, Tr. 92-93, 98, 106-07, 112, and explained that "evidence that may have been available from [Plaintiff's] medical source(s) cannot be obtained[,]" Tr. 95, 109.

Dr. Bradley then made several observations with respect to Plaintiff's CE with Dr. Bagner in June 2017. Dr. Bradley observed that Dr. Bagner noted that Plaintiff was "overall independent able" in terms of Plaintiff's activities of daily living ("ADLs"). Tr. 95, 110. Dr. Bradley also observed that Plaintiff's "[p]resentation and social interaction with the examiner during [the] mental CE was adequate" and that the "objective [mental status examination ("MSE")] did not reveal any evidence of significant dysfunction in orientation, communication, perception, or thought." Tr. 96-97, 111. Dr. Bradley added that Plaintiff's "[m]emory and concentration were below expectations but not significantly impaired." Id.

Dr. Bradley opined that Dr. Bagner's medical source statement ("MSS") was "too restrictive [and] not supporte[d] w[ith the] overall [evidence of record ("EOR")] [in Plaintiff's] file." Id. Dr. Bradley also found, however, that Dr. Bagner's medical source opinion ("MSO") "of mild to moderate limitations is supported by/consistent with [Plaintiff's] MSE performance." Tr. 97, 111.

Based on her review of Plaintiff's mental health EOR, which again included only Dr. Bagner's opinion, Dr. Bradley opined that Plaintiff's mental health problems caused:

- "mild" limitations in Plaintiff's ability to remember or apply information and to interact with others;

11

- "moderate" limitations in his ability to concentrate, persist, or maintain pace; and

- "no" limitations in Plaintiff's ability to manage himself.

Tr. 96, 110 (capitalization normalized).

Dr. Bradley then elaborated that, with respect to Plaintiff's "sustained concentration and persistence limitations[,]" Plaintiff would be "[m]oderately limited" in his ability to:

- "carry out detailed instructions";

- "maintain attention and concentration for extended periods"; and

- "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

Tr. 100, 114.

Dr. Bradley opined, however, that Plaintiff was "[n]ot significantly limited" in his ability to:

- "carry out very short and simple instructions";

- "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances";

- "sustain an ordinary routine without special supervision";

- "work in coordination with or in proximity to others without being distracted by them"; and

- "make simple work-related decisions."

Id.

Dr. Bradley explained that Plaintiff's "capacity to attend and persist for 2-hour intervals while accomplishing job tasks consisting of straightforward, recurring, and uniform steps is not seriously limited by the presence of the mental impairment." Id. Dr. Bradley added, "[h]owever, [that] the signs/symptoms of the mental impairment could cause [Plaintiff] to have difficulty maintaining levels of

12

concentration and productivity for skilled work, particularly in work environments requiring multitasking under pressure." Tr. 100, 114-15. Dr. Bradley opined that Plaintiff would have "[n]o" social interaction limitations" because "[t]here is no compelling evidence in the MER to suggest significant limitations in social functioning attributable to the mental impairment." Tr. 100, 115.

Dr. Bradley then elaborated that with respect to Plaintiff's "adaptation limitations[,]" Plaintiff would be "[m]oderately limited" in his ability to "respond appropriately to changes in the work setting." Tr. 101, 115.

Dr. Bradley opined, however, that Plaintiff was "[n]ot significantly limited" in his ability to:

- "be aware of normal hazards and take appropriate precautions";
- "travel in unfamiliar places or use public transportation"; and
- "set realistic goals or make plans independently of others."

Id. Dr. Bradley explained that "[t]here is no compelling evidence to suggest that [Plaintiff's] capacity to appreciate/adhere to occupational safety guidelines, secure transportation to a jobsite, or do basic planning for work activities is especially limited by mental impairment." Id. Dr. Bradley added, however, that Plaintiff's "capacity to adjust effectively to abrupt changes in the work schedule/process is likely limited by the mental impairments." Id.

Dr. Bradley concluded her DDE by opining that "[o]verall MER and functional evidence indicates that [Plaintiff's] mental impairments appear to impose some work related limitations, but do not preclude all work. [Plaintiff] is able to meet the mental demands of a simple vocation on a sustained basis, despite the limitations resulting from any impairment." Id.

### 4.    The ALJ's Consideration Of Relevant Medical Opinions

#### a.    The ALJ's Consideration Of Dr. Bradley's Opinion

The ALJ observed that Dr. Bradley "opined that [Plaintiff] had a moderate limitation in the ability to concentrate persist and maintain pace but retained the

ability to perform simple tasks on a sustained basis." Tr. 19 (citations omitted).
The ALJ gave Dr. Bradley's opinion "significant weight" because "Dr. Bradley had the opportunity to review [Plaintiff's] statements and medical records" and because "her findings are supported by the examination and opinion by the [CE] as well as [Plaintiff's] [ADLs]." Id. (citations omitted).

                    b.    The ALJ's Consideration Of Dr. Bagner's Opinion

The ALJ observed that Dr. Bagner "opined that [Plaintiff] could perform simple instructions with mild limitations and detailed instructions with moderate limitations, interact with others with a moderate limitation, comply with attendance with a mild limitation[], respond to changes with a mild limitation[], and respond to work pressure with a moderate limitation." Id. (citation omitted). The ALJ gave Dr. Bagner's opinion "significant weight" because it was "supported by his examination of [Plaintiff] and [Plaintiff's] difficulty concentrating." Id. (citation omitted). The ALJ added that Dr. Bagner's "opinion is considered in context with the remaining records and where his opinion varies from Dr. Bradley, Dr. Bradley's opinion is given greater weight as she had the opportunity to review records not available to Dr. Bagner." Id.

        **5.**    **Standard To Review The ALJ's Analysis Of Medical Opinions**

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors

such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 6. The ALJ's Decision Is Not Supported By Substantial Evidence

As an initial matter, the Court observes that Dr. Bagner's opinion is contradicted by Dr. Bradley's opinion. Specifically, Dr. Bagner opined that Plaintiff had moderate limitations in his ability to "interact appropriately with the public, co-workers and supervisors[,]" Tr. 381, whereas Dr. Bradley opined at one

15

point that Plaintiff would have only "mild" limitations in his ability to "interact with others," Tr. 100, 114, and, at another point, that Plaintiff would have "[n]o" social interaction limitations[,]" Tr. 100, 115. Moreover, Dr. Bagner opined that Plaintiff would have moderate limitations in his ability to "respond to work pressure in a usual work setting[,]" Tr. 381, whereas Dr. Bradley opined that Plaintiff would merely "have difficulty maintaining levels of concentration and productivity" in a "skilled work[ing]" environment only and "particularly in work environments requiring multitasking under pressure[,]" Tr. 100, 114-15. Finally, as noted previously, although Dr. Bradley found that Dr. Bagner's MSO "of mild to moderate limitations is supported by/consistent with [Plaintiff's] MSE performance[,]" Tr. 97, 111, Dr. Bradley also opined that Dr. Bagner's MSS was "too restrictive [and] not supporte[d] w[ith the] overall EOR [in Plaintiff's] file[,]" id. Although these two findings appear somewhat contradictory to one another, the latter finding—that Dr. Bagner's MSS was too restrictive and not supported by the record—is in direct odds with Dr. Bradley's findings.

Therefore, because Dr. Bagner's opinion is contradicted by Dr. Bradley's opinion, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Bagner's contradicted opinion. See Trevizo, 871 F.3d at 675. The Court finds that the ALJ's reasons for rejecting Dr. Bagner's opinion fails to meet this standard and that remand for further proceedings is necessary for the following reasons.

First, as discussed previously, the ALJ found that where Dr. Bagner's opinion "varies from Dr. Bradley, Dr. Bradley's opinion is given greater weight as [Dr. Bradley] had **the opportunity to review** records not available to Dr. Bagner." Tr. 19 (emphasis added). Dr. Bradley, however, indicated that, with respect to Plaintiff's mental health medical records, she reviewed only the CE findings of Dr. Bagner, Tr. 92-93, 98, 106-07, 112, and explained that "evidence that may have

16

been available from [Plaintiff's] medical source(s) cannot be obtained[,]" Tr. 95, 109.

Thus, Dr. Bradley based her reviewing opinion on Dr. Bagner's examining opinion and the ALJ gave Dr. Bradley's opinion greater weight because—even though Dr. Bradley did not do so—Dr. Bradley had the **opportunity** to review other records.  <u>See</u> Tr. 19.  It is unclear how the mere opportunity to review records, without actually reviewing them, gave Dr. Bradley greater insight into Plaintiff's mental health limitations than Dr. Bagner, who actually examined Plaintiff and whose opinion Dr. Bradley's opinion was based off of.  It is also unclear how Dr. Bradley found the limitations Dr. Bagner assessed to be consistent with Plaintiff's examination performance, but inconsistent with the overall evidence in Plaintiff's file when, again, the only medical opinion relating to Plaintiff's mental health limitations Dr. Bradley reviewed was Dr. Bagner's CE report.

Accordingly, the Court finds that Dr. Bradley's opportunity to review other records, when Dr. Bradley's own report indicates that she did not actually review any additional records, was not a specific and legitimate reason to reject portions of Dr. Bagner's examining opinion.

Second, the ALJ noted that Dr. Bagner's "opinion is considered in context with the remaining records."  Tr. 19.  Consequently, the Court reviewed the remaining records discussed by the ALJ and found that the ALJ appears to have rejected specific portions of Dr. Bagner's opinion when assessing Plaintiff's mental RFC ("MRFC").  The Court finds that the ALJ's reasons for rejecting portions of Dr. Bagner's opinion when assessing Plaintiff's MRFC were also not supported by substantial evidence in the record.

For example, the ALJ rejected Dr. Bagner's opinion that Plaintiff would have "moderate limitations responding to workplace pressure[,]" because "the

record does not support limitations in this category." Tr. 18. The ALJ explained that no limitations were supported in this category because:

- Plaintiff "has adapted to changes in his living situation from living in an apartment to living with friends";
- Plaintiff "has adapted without the need for emergency intervention, hospitalizations, or regular treatment by a specialist";
- Plaintiff "does not require medication for treatment of his mental health";
- "[t]he record supports that his mental health remains stable despite stressful and changing circumstances";
- "Dr. Bradley opined [Plaintiff] had no limitations in this category"; and
- "Dr. Bradley's opinion is most consistent with the record."

Id. (citations omitted). The Court addresses each of the ALJ's above noted reason in turn.

With respect to the ALJ's finding that Plaintiff "has adapted to changes in his living situation from living in an apartment to living with friends[,]" id. (citing generally to Plaintiff's "[h]earing testimony"), a review of Plaintiff's hearing testimony reveals that Plaintiff testified that his address of record is "more of a mailing address. [He's] really staying at different places[,]" Tr. 83. Further, Dr. Bagner noted in his medical report that Plaintiff was "currently homeless" at the time of the examination. Tr. 379. Thus, the ALJ found that Plaintiff would have no limitations in responding to workplace pressure, in part, because of Plaintiff's ability to adapt to his living situation, when evidence in the record that the ALJ failed to acknowledge or discuss reveals that Plaintiff was homeless at times and merely used his friend's address as a mailing address at other times. As such, the ALJ's rejection of Dr. Bagner's opinion that Plaintiff had moderate limitations responding to workplace pressure ignored evidence of Plaintiff's apparent struggles to find stable living arrangements during the relevant time period when making this finding. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir.

2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Next, with respect to the ALJ's rejection of Dr. Bagner's opinion because Plaintiff managed his mental health impairments without treatment or medication, the ALJ's rejection ignores Plaintiff's testimony that he "want[s] to get treatment, but [he's] just so—sometimes so depressed, [he] can't leave the house. It's just hard for—it's just difficult for him." Tr. 79. The ALJ's failure to consider Plaintiff's statement that Plaintiff had not received treatment for his mental health because his symptoms prevented him from doing so undercuts the ALJ's finding.[4] See Holohan, 246 F.3d at 1207-08; see also Orn, 495 F.3d at 638 ("an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); see also id. (an "'adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment'" (quoting S.S.R. 96–7p at 7–8)).

Additionally, and relatedly, the Court observes that Plaintiff submitted medical records to the Appeals Council after the ALJ's decision was rendered. Those medical records were apparently dated June 25, 2019—which is before the ALJ rendered her decision and, thus, was during the relevant time period—and indicate that Plaintiff "is currently taking psychotropic medications[,]" was "currently seeking" mental health services, and had a "significant impairment in

---

[4] The Court notes that the ALJ observed Plaintiff's testimony that Plaintiff has trouble leaving the house generally. See Tr. 17 (the ALJ noting that Plaintiff "testified to crying often, having trouble leaving the house . . . ."). However, the ALJ failed to acknowledge Plaintiff's additional testimony that Plaintiff's difficulty leaving the house is why Plaintiff did not receive mental health treatment at times when he would have otherwise liked to receive such treatment.

life functioning" due to Plaintiff's mental health impairments at the time the report was written. Tr. 35, 39. The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision" and so it "did not consider and exhibit the evidence." Tr. 2. Because this evidence was not before the ALJ, the Court does not remand as to this evidence. However, because this evidence is now part of the record and appears contrary to the ALJ's finding that Plaintiff did not require treatment or medication for his mental health impairments and his mental health remains stable despite stressful changing circumstances, on remand, the ALJ shall explain whether this evidence is material to the ALJ's analysis in light of the evidence that the ALJ did not consider.

With respect to the ALJ's rejection of Dr. Bagner's opinion that Plaintiff has a moderate limitation in his ability to "respond to workplace pressure[,]" Tr. 381, because "Dr. Bradley opined [Plaintiff] had no limitations in this category[,]" Tr. 17 (citing Tr. 96, 110), the ALJ's finding appears to be unsupported by the record because an inspection of Dr. Bradley's opinion that the ALJ cited reveals that Dr. Bradley opined only that Plaintiff would have no limitations in "[a]dapt[ing] or manag[ing] oneself." Tr. 96, 110. Thus, the ALJ appears to have rejected Dr. Bagner's opinion that Plaintiff is moderately limited in his ability to respond to workplace pressure because Dr. Bradley opined that Plaintiff would have no limitations in his ability managing himself, and these two types of limitations do not appear to be the same.

Moreover, even if these two sections of the doctors' opinions were discussing the same thing, and Dr. Bradley was opining that Plaintiff's ability to adapt and manage himself with no limitations meant that Plaintiff could also respond to workplace pressure without limitation, such an interpretation of this portion of Dr. Bradley's opinion would appear to render Dr. Bradley's opinion internally inconsistent. Specifically, as discussed above, Dr. Bradley also opined that Plaintiff would "have difficulty maintaining levels of concentration and

20

productivity for skilled work, particularly in work environments requiring multitasking under pressure." Tr. 100, 114-15. This second part of Dr. Bradley's opinion appears to indicate that Plaintiff would have difficulty, and possibly limitations, performing skilled work under pressure while multitasking. This difficulty responding to workplace pressure in these circumstances appears to be at odds with having no limitations in responding to workplace pressure, as the ALJ found Dr. Bradley to have opined.

Consequently, the ALJ's rejection of Dr. Bagner's opinion that Plaintiff has a moderate limitation in his ability to "respond to workplace pressure[,]" Tr. 381, because "Dr. Bradley opined [Plaintiff] had no limitations in this category[,]" Tr. 17 (citing Tr. 96, 110), does not appear to be supported by the record. On remand, the ALJ shall clarify this apparent discrepancy.

Although additional errors in the ALJ's analysis of Dr. Bagner's opinion may exist, because the Court finds that remand for further proceedings is necessary so that the ALJ may reconsider the weight of Dr. Bagner's opinion, the Court declines to address any additional errors at this time.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED: <u>07/8/2021</u>

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge